ACCEPTED
14-14-00994-CV
FOURTEENTH COURT OF APPEALS
HOUSTON, TEXAS
8/10/2015 10:25:03 PM
CHRISTOPHER PRINE
CLERK

## NO. 14-14-00994-CV

## IN THE COURT OF APPEALS

## FOR THE FOURTEENTH JUDICIAL DISTRICT OF TEXAS

## HOUSTON, TEXAS

FILED IN
14th COURT OF APPEALS
HOUSTON, TEXAS
8/10/2015 10:25:03 PM
CHRISTOPHER A. PRINE
Clerk

### ANDREW T. VO, INDIVIDUALLY AND D/B/A LARRY VO, VIET LE, TAM VAN LE AND VO-LE, INC., Appellant

### V.

### HO KIM DOAN, Appellee

### ON APPEAL FROM THE 129th JUDICIAL DISTRICT COURT
### HARRIS COUNTY, TEXAS
### TRIAL COURT CAUSE NO. 2007-19358
### The Honorable Michael Gomez Presiding

### ORIGINAL BRIEF ON BEHALF OF APPELLANTS, ANDREW T. VO, INDIVIDUALLY AND D/B/A LARRY VO, VIET LE, TAM VAN LE AND VO-LE, INC.

### ORAL ARGUMENT REQUESTED

Marguerite K. Kingsmill (Texas Bar No. 00788902)
Christy R. Bergeron (Texas Bar No. 24044582)
Thomas P. Henican (Texas Bar No. 24075926*)*
KINGSMILL RIESS, L.L.C.
201 St. Charles Avenue, Suite 3300
New Orleans, Louisiana 70170-3300
*Attorneys for Appellants,*
*Andrew T. Vo d/b/a Larry Vo, Andrew T. Vo,*
*Viet Le, Tam Van Le and Vo-Le Inc.*

1

# IDENTITY OF PARTIES AND COUNSEL

**Appellants / Defendants:**

Andrew T. Vo d/b/a Larry Vo, Viet Le, Tam Van Le, Vo-Le, Inc.

**Counsel for Appellants / Defendants**

Marguerite K. Kingsmill (Texas Bar No. 00788902)
Christy R. Bergeron (Texas Bar No. 24044582)
Thomas P. Henican (Texas Bar No. 24075926*)*
KINGSMILL RIESS, L.L.C.
201 St. Charles Avenue, Suite 3300
New Orleans, Louisiana 70170-3300

**Appellee / Plaintiff**

Ho Kim Doan (Deceased)

**Counsel for Appellee / Plaintiff**

| | |
|---|---|
| Mark T. Murray | Robert S. Kwok |
| (Texas Bar No. 14724810) | (Texas Bar No. 00789430) |
| Stevenson & Murray | William W. Hoke |
| 24 Greenway Plaza, Suite 750 | (Texas Bar No. 24046086) |
| Houston, Texas 77046 | Robert Kwok & Associates, L.L.P. |
| | 6588 Corporate Drive, Suite 300 |
| | Houston, Texas 77036 |

S:\Vo - 1191\001 Doan\Pleadings - 14th Ct of Appeals No. 14-14-00994-CV\150810 Appellants Original Brief.docx

# TABLE OF CONTENTS

**INDEX OF AUTHORITIES**................................................................**5**

**STATEMENT OF THE CASE**........................................................**6**

**REQUEST FOR ORAL ARGUMENT**..........................................**8**

**ISSUES PRESENTED**....................................................................**9**

**STATEMENT OF FACTS**.............................................................**11**

**Procedural and Factual Background**.......................................... 11

**Facts on the accident, including additional evidence that Plaintiff sustained no injuries while in service of the vessel**........................................................**16**

**SUMMARY OF THE ARGUMENT** ..........................................**21**

**ARGUMENT** ..................................................................................**25**

   **1.    The Order reinstating the jury verdict and Final Judgment are improper and procedurally defective because they were rendered in favor of a deceased plaintiff, in response to motions filed by his former counsel, without proper authority and without proper substitution of any authorized party to prosecute this case, in accordance with Rule 151 of the Texas Rules of Civil Procedure and Texas probate law.**...................................................**25**

   **2.    It was erroneous for the trial court to reinstate a jury verdict and enter judgment based on that verdict in favor of a deceased plaintiff, who previously moved to set aside the same jury verdict approximately five years earlier, solely because Plaintiff had subsequently died. In addition, Plaintiff's motions to reinstate the jury verdict and enter judgment were untimely and waived.**........................................................................**28**

   **3.    It was extremely prejudicial and erroneous for the trial court to reverse its order granting mistrial, and reinstate the jury verdict, which was set aside at Plaintiff's request approximately five years earlier, after substantial further discovery and expenditures by Defendants in defending this case, in reliance on the mistrial order granted many years ago.** ............**32**

   **4.    The reinstated verdict was unsupported by the legally insufficient evidence admitted at trial and contrary to the substantial evidence (presented at trial and discovered after the trial, in reliance on the trial**

S:\Vo - 1191\001 Doan\Pleadings - 14th Ct of Appeals No. 14-14-00994-CV\150810 Appellants Original Brief.docx

court's mistrial and revised scheduling orders) establishing that Plaintiff was not injured while in service of the vessel....................................................33

5. The verdict which the trial court reinstated, awarding attorneys fees and punitive damages for failure to pay maintenance and cure, are counter to and inconsistent with the trial court's post-verdict rulings denying summary judgment on maintenance and cure. ..............................................37

6. As recognized by Plaintiff's counsel in seeking the original mistrial, the verdict which the trial court reinstated is legally defective because it is internally inconsistent. In addition, the verdict form and charges did not accurately set forth the proper law with respect to recovery of punitive damages for failure to pay maintenance and cure and the jury's findings are internally inconsistent. ..............................................................................38

7. It was error for the trial court, in its Final Judgment and at the request of Plaintiff's counsel, to selectively enter judgment on certain of the jury's findings, as set forth in its verdict, while excluding other findings of the jury's verdict.....................................................................................42

8. Alternatively, the damages by the jury in the reinstated verdict are excessive and/or unsupported and Plaintiff is not entitled to interest on the amounts awarded in the reinstated jury verdict or, if entitled to any interest, the interest should not accrue between the time mistrial was ordered and Final Judgment. ..............................................................................43

**PRAYER FOR RELIEF**....................................................................45

**CERTIFICATE OF SERVICE** ........................................................47

**CERTIFICATE OF COMPLIANCE** ................................................47

**APPENDIX** .....................................................................................48

4

# INDEX OF AUTHORITIES

## Cases

*In re Baylor Medical Center*, 280 S.W. 3rd 277 (Tex. 2008)............................ 29, 30
*Jack v. Holiday World of Houston*, 262 S.W. 3d 42 (Houston District 2008) ........29
*Palmer v. Coble Wall Trust Co.*, 851 S.W. 2d 178 (Tex. 1992).............................26
*Rodriguez v. State*, 850 S.W.2d 516, 520 ........................................................ 29, 30
*State v. Meyer*, 953 S.W.2d 822 (Tex. App. – Corpus Christi 1997) .......................28

## Other Authorities

Section 32.005 of the Estate Code ............................................................................26
Sections 32.001 and 32.002 ......................................................................................26
Texas Estates Code, Section 31.001 .........................................................................26
Texas Government Code, Section 25.003(e) ..............................................................25
Texas probate law .................................................................................... 9, 25, 26

## Rules

Rule 151 of the Texas Rules of Civil Procedure ......................................... 9, 25, 26
Rule 152 of the Texas Rules of Civil Procedure ......................................................15
Rule 156 of the Texas Rules of Civil Procedure ......................................................30
Rule 39 of the Texas Rules of Appellate Procedure ..................................................8

## STATEMENT OF THE CASE

This appeal is from a reinstatement of a jury verdict, in a maritime personal injury case, approximately five years after the trial court set aside that same verdict in response to a motion for mistrial on behalf of Plaintiff. The alleged accident occurred in July, 2006, and the original Petition was filed on March 28, 2007 in the 129th Judicial District Court of Harris County, Texas (CR 5). The case was tried to a jury in September, 2009, with the Hon. Michael Gomez presiding (CR 97-119). During the trial, counsel for Plaintiff moved for mistrial based on alleged improper statements made/elicited by prior counsel for Defendants. On September 24, 2009, the jury rendered a verdict, awarding to Plaintiff a total of $134,531.40, consisting of $21,480.00 in maintenance, $51,551.40 in cure, $4,000 in attorneys for failure to pay maintenance and cure, and $57,500.00 in punitive damages (CR 105-119). However, the jury also found no negligence by the M/V MR. Larry Vo or its agents, employees, representatives or servants (CR 105, Jury Question No. 1); that no unseaworthiness of the vessel was a cause of Plaintiff's injuries (CR 107, Jury Question No. 3); and awarded no damages for negligence or unseaworthiness, including no medical expenses, past or future, for Plaintiff's alleged injuries (CR 108-9, Jury Question No. 4).

Plaintiff was dissatisfied with the verdict, and recognized that it was internally inconsistent and defective, and therefore re-urged the motion for mistrial

6

he had urged during the trial, which motion was granted by the trial court and the verdict set aside on October 20, 2009 (CR 88). After the mistrial order, a new scheduling order was entered by the trial court, which included reopening of discovery.

On September 1, 2012, plaintiff died, for reasons unrelated to his injury claims in this case (CR 139-142). On September 13, 2012, former counsel for Plaintiff filed a Motion To Enter Final Judgment (CR 91) and Motion To Reconsider and Withdraw Order of Mistrial (CR 121), without informing the trial court that Plaintiff had died almost two weeks earlier, and without authorization of any party to file these motions (as counsels' former client was deceased) and without substitution of any proper party to prosecute Plaintiff's claims. On August 13, 2014, former counsel for Plaintiff filed an Amended Motion To Reconsider and Withdraw Order of Mistrial (CR 13) and Amended Motion To Enter Final Judgment (CR 139), again without substitution of any proper party to prosecute Plaintiff's claims. Notwithstanding that no proper party had ever been substituted to file these motions or prosecute Plaintiff's claims, on September 16, 2014, the trial court ordered that the order of mistrial, granted at the request of Plaintiff almost five years earlier, be withdrawn and set aside: the verdict rendered on or about September 24, 2009 be reinstated and final judgment be entered (CR 188). On the same date, September 16, 2014, the trial court entered Final Judgment in

7

favor of Plaintiff and against Defendants, awarding $134,531.40, plus costs, mediation expenses and interest permitted by law (CR 189-92). In the Final Judgement, the trial court, at the request of Plaintiff's counsel and over Defendants' objection, selectively entered judgment on certain of the jury's findings, as set forth in its verdict, while excluding other portions of the verdict (CR 189-92). On November 17, 2014, the trial court denied Defendants' Motion For Judgment Notwithstanding the Verdict or For New Trial (CR 410). This appeal followed (CR 417).

## REQUEST FOR ORAL ARGUMENT

In accordance with Rule 39 of the Texas Rules of Appellate Procedure, Appellants respectfully request oral argument in this case. This case presents important issues of proper substitution of parties, the propriety and prejudice to defendants of reinstatement of a jury verdict, which was set aside at the request of Plaintiff and then reinstated some five years later, solely because of his death, in addition to issues regarding sufficiency of evidence to support such verdict. Counsel for Appellants is of the opinion that oral argument will serve to emphasize and clarify the issues, and benefit this Honorable Court by providing the opportunity to question counsel for their input on these issues.

8

# ISSUES PRESENTED

1. The Order reinstating the jury verdict and Final Judgment are improper and procedurally defective because they were rendered in favor of a deceased plaintiff, in response to motions filed by his former counsel, without proper authority and without proper substitution of any authorized party to prosecute this case, in accordance with Rule 151 of the Texas Rules of Civil Procedure and Texas probate law.

2. It was erroneous for the trial court to reinstate a jury verdict and enter judgment based on that verdict, in favor of a deceased plaintiff, who previously moved to set aside the same jury verdict approximately five years earlier, solely because Plaintiff had subsequently died. In addition, Plaintiff's motions to reinstate the jury verdict and enter judgment were untimely and waived.

3. It was extremely prejudicial and erroneous for the trial court to reverse its order granting mistrial, and reinstate the jury verdict, which was set aside at Plaintiff's request approximately five years earlier, after substantial further discovery and expenditures by Defendants in defending this case, in reliance on the mistrial order granted many years ago.

4. The reinstated verdict was unsupported by the legally insufficient evidence admitted at trial and contrary to the substantial evidence (presented at trial

9

and discovered after the trial, in reliance on the trial court's mistrial and revised scheduling orders) establishing that Plaintiff was not injured while in service of the vessel.

5.  The verdict which the trial court reinstated, awarding attorneys fees and punitive damages for failure to pay maintenance and cure, are counter to and inconsistent with the trial court's post-verdict rulings denying summary judgment on maintenance and cure.

6.  As recognized by Plaintiff's counsel in seeking the original mistrial, the verdict which the trial court reinstated is legally defective because the jury's findings are internally inconsistent.  In addition, the verdict form and charges did not accurately set forth the proper law with respect to recovery of punitive damages for failure to pay maintenance and cure and the jury's findings are internally inconsistent.

7.  It was error for the trial court, in its Final Judgment and at the request of Plaintiff's counsel, to selectively enter judgment on certain of the jury's findings, as set forth in its verdict, while excluding other findings of the jury's verdict.

8.  Alternatively, the damages awarded by the jury in the reinstated verdict are excessive and/or unsupported and Plaintiff is not entitled to interest on the amounts awarded in the reinstated jury verdict or, if entitled to any interest,

10

the interest should not accrue between the time mistrial was ordered and Final Judgment.

## STATEMENT OF FACTS

**Procedural and Factual Background**

This lawsuit arises out of injuries alleged to have been sustained by plaintiff, Ho Kim Doan ("Plaintiff"), while working onboard the Defendants' vessel, the M/V MR. LARRY VO ("M/V Larry Vo"), in July, 2006 (CR 5). The Petition was filed on March 28, 2007 (CR 5). Following amended pleadings, discovery and motion practice, the case proceeded to trial, beginning on September 22, 2009 (CR 5-34, 41, 82, 188-92). During the three-day trial, Plaintiff's counsel moved for mistrial based on alleged prejudicial statements made and/or testimony elicited by Defendants' prior counsel. During the trial, the trial court did not grant a mistrial, but instead let the case go to verdict (CR 88). In the verdict, the jury found no negligence by the M/V Larry Vo or its agents, employees, representatives or servants (CR 105, Jury Question No. 1); that no unseaworthiness of the vessel was a cause of Plaintiff's injuries (CR 107, Jury Question No. 3); and awarded no damages for negligence or unseaworthiness, including no medical expenses, past or future, for Plaintiff's alleged injuries (CR 108, Jury Question No. 4). However, the jury awarded maintenance of $21,480.00 and cure of $51,551.40, for the time

period July 19, 2006 until July 5, 2008, at which time the jury found Plaintiff had reached maximum cure (CR 110-14, Jury Question Nos. 5-9).[1]

In addition, the jury awarded $4,000.00 in attorneys fees for failure to pay maintenance and cure (CR 115-16, Jury Question Nos. 10 and 11). Further, the jury awarded an additional $57,500.00 in punitive damages, almost three times the amount of maintenance and cure awarded, although there was no jury charge on punitive damages and the jury interrogatories did not accurately set forth prevailing law (CR 117, Jury Question No. 12). Further, the Jury Charge (CR 97-104) did not address punitive damages and, along with Jury Question No. 12, were not in accordance with prevailing maritime law on recovery of punitive damages for failure to pay maintenance and cure. Instead, Jury Question No. 12 is framed in terms of punitive damages based on general maritime law or unseaworthiness and is clearly defective and unsupported by law (CR 117).

Plaintiff was dissatisfied with the verdict and his counsel re-urged the motion for mistrial, which was granted by the trial court, by order of October 20, 2009 (CR 88). Thus, Plaintiff was able to get "one bite at the apple" by going to verdict and, after he was dissatisfied with the verdict, another "bite at the apple" by

---

[1] As amplified below, these findings are directly contrary to the overwhelming evidence, including Plaintiff's own admissions, establishing that Plaintiff was not injured while in service of the vessel. Indeed, the trial court specifically denied summary judgment on maintenance and cure several months after the jury verdict was set aside.

12

having the verdict set aside and the case re-set for trial on the trial docket.

Thereafter, the trial court reopened discovery and other pre-trial deadlines were established. The parties conducted motion practice and additional discovery over the course of the next twenty-seven (27) months, during which time the case was re-set for trial and continued, more than once. On December 11, 2009 and January 29, 2010, after the jury verdict was set aside and notwithstanding that the trial court had denied Plaintiff's pre-trial summary judgment motion (CR 41), which specifically included maintenance and cure, Plaintiff filed additional motions for summary judgment, which again included maintenance and cure. By order of May 4, 2010, *inter alia*, the trial court, after the jury verdict and declaring mistrial, denied Plaintiff's motions seeking summary judgment as to maintenance and cure, finding that there were disputed material facts as to whether Plaintiff was entitled to *any* maintenance or cure, much less attorneys fees or punitive damages for alleged failure to pay maintenance and cure.

In subsequent discovery authorized permitted by the trial court after it granted Plaintiff's mistrial motion, Defendants obtained significant evidence further establishing that Plaintiff sustained *no injuries* in the alleged accident aboard the M/V Larry Vo (CR 249-376). Specifically, Defendants discovered that on October 17, 2006, only about three (3) months after the alleged accident in suit, Plaintiff was involved in a vehicular accident, from which he claimed, *inter alia*,

13

cervical injuries.  Thereafter, on July 26, 2008, Doan was involved in another vehicular accident, from which he claimed neck and back injuries. *Id.*  At trial, Plaintiff relied upon the testimony of Dr. James Key ("Dr. Key"), treating orthopaedic surgeon.  Plaintiff never disclosed these other accidents to Dr. Key or other health care professionals who treated him for the vehicular injuries.  As of November 30, 2006, within a few months of the accident, Plaintiff's treating chiropractor related all of his cervical symptoms and injuries to the October 17, 2006 vehicular accident.  Moreover, Plaintiff specifically represented to Richard Hoang, his treating chiropractor for the July 26, 2008 accident, that he had no prior cervical or other injuries. *Id.*

On September 1, 2012, plaintiff died, for reasons unrelated to his injury claims in this case (CR 139-142).  On September 13, 2012, counsel for Plaintiff filed a Motion To Enter Final Judgment (CR 91) and Motion To Reconsider and Withdraw Order of Mistrial (CR 121) (collectively, "these motions"), without informing the trial court that Plaintiff had died almost two weeks earlier, and without authorization of any party to file these motions (as counsels' former client was deceased) and without substitution of any proper party to prosecute Plaintiff's claims.  On August 13, 2014, counsel for Plaintiff filed an Amended Motion To Reconsider and Withdraw Order of Mistrial and Amended Motion To Enter Final Judgment, again without substitution of any proper party to prosecute Plaintiff's

14

claims (CR 134-166). Based on these clear defects in the motions filed by Plaintiff's former counsel, Defendants even filed an Application For Writ of Scire Facias, pursuant to Rule 152 of the Texas Rules of Civil Procedure, requesting that the Clerk of Court issue a writ requiring the heirs, administrator or executor of decedent, Ho Kim Doan, to appear and prosecute this lawsuit. Without explanation, the trial court denied Defendants' Application for Writ of Scire Facias, "at this time" (CR 411).

Notwithstanding that no proper party had ever been substituted to file these motions or prosecute Plaintiff's claims, on September 16, 2014, the trial court ordered that the order of mistrial, granted at the request of Plaintiff almost five years earlier, be withdrawn and set aside, the verdict rendered on or about September 24, 2009, be reinstated and final judgment be entered (CR 188). On the same date, September 16, 2014, the trial court entered Final Judgment in favor of Plaintiff and against Defendants, awarding $134,531.40 (the same total principal amount of the original jury verdict, plus costs, mediation expenses and interest permitted by law (CR 189-92). The reinstatement of the jury verdict and Final Judgment were issued by the trial court in response to completely procedurally defective and improper motions filed by Plaintiff's former counsel, without any authorization, proper authority or substitution of a proper party to prosecute Plaintiff's claims. At no time while this case was handled by the trial court was

15

any proper substitution ever made. Further, in the Final Judgement, the trial court, at the request of Plaintiff's counsel and over Defendants' strenuous objection, selectively entered judgment on certain of the jury's findings, as set forth in its verdict, while excluding other portions of the verdict (CR 189-92). On November 17, 2014, the trial court denied Defendants' Motion For Judgment Notwithstanding the Verdict or For New Trial (CR 410). This appeal followed (CR 417).

**Facts on the accident, including additional evidence that Plaintiff sustained no injuries while in service of the vessel.**

This lawsuit arises out of injuries alleged to have been sustained by Plaintiff while working onboard the Defendants' vessel, the M/V Larry Vo, on July 14, 2006.[2] On July 7, 2006, Plaintiff approached Tam Le, the captain of the M/V Mr. Larry Vo, for employment as a crewmember.[3] Although the Plaintiff had prior work experience as a fisherman with many other vessels, the Plaintiff had no prior work relationship with the Defendants.[4] The shrimp season was opening the following day (*i.e.*, July 8, 2006),[5] and because the Defendants were short one

---

[2]     Plaintiff has indicated to medical providers (as shown in their records) and in his Petitions that the accident occurred on July 19, 2006, but this is not correct. Trial Exhibits 15 and 17; CR 5, 27. Defendants are in the process of requesting supplementation of the appeal record to include the transcript from the September, 2009 trial and all admitted trial exhibits.

[3]     See September 23, 2009 trial testimony of Tam Van Le, via admission at trial of deposition testimony by consent, pp. 69; September 23, 2009 trial testimony of Yen Vo Lu, also admitted at trial by consent of deposition transcript, testimony pp. 74-5.

[4]     *Id*.

[5]     Trial testimony of Tam Van Le, p. 77, 126.

16

crewmember, the Defendants hired the Plaintiff. Soon thereafter, the Defendants' vessel departed to sea for the first fishing trip of the season. At the time of his hiring, the Plaintiff did not disclose any pre-existing injuries to the Defendants or Captain Le. In addition, at trial there were medical records introduced which included an evaluation form signed by Doan. On this form Doan disclosed an <u>auto accident</u> as the cause of his injuries, for which he was being treated by Mana in August 9, 2006, shortly after the alleged boat accident in suit. Plaintiff also denied ever having surgery (Trial Exhibit 13). Further, Plaintiff's medical records, introduced at trial, apparently show that he had multiple surgeries, including four arthroscopic procedures between June 9, 2005 and August 24, 2006. (Trial Exhibit 15). Plaintiff never disclosed to Defendants that auto accident; the later discovered vehicular accidents, or any of these purported surgeries.

The incident that is the subject of this lawsuit allegedly occurred on July 14, 2006. That morning, as Captain Le and the crewmembers were reeling in the shrimp nets, a new rope that was used to pull and hoist the shrimp nets onto the deck snapped.[6] As a result, the shrimp net and turtlehead fell and ricocheted off the deck of the vessel and made contact with the Plaintiff.[7] The shrimp net and turtlehead did not strike the Plaintiff directly. When a fellow crew member asked

---

[6] September 23, 2009 trial testimony of Tam Van Le, dated October 5, 2007, p. 77-8.

[7] *Id.*; See also, September 23, 2009 trial testimony from Ngoi Nguyen, pp. 104-116.

17

the Plaintiff if he was hurt, the Plaintiff responded, "No."[8] Following the incident, the Plaintiff rested for approximately fifteen minutes and resumed work without any complaints of the alleged injury. He jumped off the boat and went swimming almost every day after the accident.[9] The Plaintiff never requested that he be taken back to port, and he never complained of any injuries.[10]

The U.S. Coast Guard was not even notified of the incident until July 24, 2006, when the Defendants' vessel returned to port for repairs to a damaged water pump.[11] Once the vessel was docked, the Plaintiff was informed his services were no longer needed on the Defendants' vessel. Only then did the Plaintiff notify the Coast Guard.

After the accident, Doan continued to work for 11 straight days without complaint. The boat came into port twice for repair work between the days of the accident, July 14, 2006, and July 25, 20006, and Doan did not mention any pains or injury and continued to work normally.[12] After the accident, Plaintiff dove into the water and went swimming almost every day after the incident without any sign of pain or restriction. Once when the boat came into port, Plaintiff used a large

---

[8] September 23, 2009 trial testimony of Tam Van Le, pp. 129-136.

[9] *Id.; Trial testimony from Ngoi Nguyen, pp. 104-116.*

[10] *Id.*

[11] *Id.*

[12] *Id*.

18

hose to load some 15,000 gallons of water on to the vessel. September 23, 2009 trial testimony of Ngoi Nguyen, pp. 113-14.

During trial, Hoa Ngoc Vo ("Ms. Vo") testified that more than one week after the accident she saw and spoke with Plaintiff when the vessel returned to Freeport to repair a water pump. She confirmed he did not appear to be injured and complained of no injuries. "Everything seem to be normal with Doan." Days later, after the boat came back to Port Bolivar, Ms. Vo saw Doan again and "he walked normally" and did not appear to be hurt. Significantly, approximately one month after the alleged accident, Plaintiff approached Ms. Vo and asked her to hire him, but she told Doan that they already had enough crew. Hoa Vo further testified that about three (3) months later (approximately four (4) months after the accident), she saw Plaintiff at My Quang Supermarket and heard him say, **"I'm not injured. I just want to have some money."** September 23, 2009 Trial Transcript of Hoa Ngoc Vo trial testimony, pp. 158-167. In addition, Plaintiff testified at trial that since the alleged incident he has engaged in selling fish and shrimp to neighbors. In connection with this work, he testified that he loads up to 70 pounds of fish and shrimp onto his truck. September 23, 2009 Trial Transcript, pp. 42-44.

Thus, the reinstated verdict was unsupported by the legally insufficient evidence admitted at trial and contrary to the substantial evidence (presented at

19

trial and discovered after the trial, in reliance on the trial court's mistrial and revised scheduling orders) establishing that Plaintiff was not injured while in service of the vessel.

S:\Vo - 1191\001 Doan\Pleadings - 14th Ct of Appeals No. 14-14-00994-CV\150810 Appellants Original Brief.docx

## SUMMARY OF THE ARGUMENT

This case arises out of an alleged maritime injury in July, 2006. The case was tried to a jury in September, 2009. The jury reached a verdict, awarding to Plaintiff a total of $134,531.40, consisting of maintenance and cure, attorneys fees for failure to pay maintenance and cure and punitive damages. The jury found no negligence by Defendants; that no unseaworthiness of the vessel caused Plaintiff any injuries and awarded no damages for negligence or unseaworthiness, including no medical expenses, past or future, for Plaintiff's alleged injuries.

Plaintiff was dissatisfied with the verdict, so he re-urged a motion for mistrial, based on purported improper statements/elicited testimony by prior counsel for Defendants during the trial. Plaintiff, through his counsel, asserted that the jury verdict was internally inconsistent and defective as a reason that mistrial should be granted. In October, 2009, the trial court granted Plaintiff's motion and ordered a mistrial, in addition to re-setting discovery and other pre-trial deadlines. Defendants conducted substantial additional discovery, incurring many thousands of dollars in attorneys fees and costs, in reliance on the mistrial order. This discovery produced substantial additional evidence that Plaintiff was not injured while in service of the vessel and therefore was not entitled maintenance and cure, much less penalties or punitive damages.

S:\Vo - 1191\001 Doan\Pleadings - 14th Ct of Appeals No. 14-14-00994-CV\150810 Appellants Original Brief.docx

On September 1, 2012, Plaintiff died. Approximately twelve days after Plaintiff's death, his former counsel filed motions seeking withdrawal of the mistrial order; reinstatement of the jury verdict and entry of judgment against Defendants. In these motions, former counsel for Plaintiff did not disclose to the trial court that Plaintiff had died. In addition, former counsel for Plaintiff filed these motions without proper authority and without properly substituting any proper party to prosecute Plaintiff's claims. During the entire proceedings in the trial court after Plaintiff's death, former counsel for Plaintiff never properly substituted any party to prosecute Plaintiff's claims and had no proper authority for any of the post-death filings on behalf of Plaintiff. Nevertheless, on September 16, 2014, almost five years after granting Plaintiff's request for mistrial and setting aside the jury verdict, the trial court ordered that the mistrial order be withdrawn and reinstated the same jury verdict, which Plaintiff's counsel had previously was internally inconsistent and defective. Contemporaneously, the trial court entered Final Judgement against Defendants based on this jury verdict. These actions by the trial court were erroneous, as they were based solely on the fact that Plaintiff had died and were taken in response to motions filed without authority or proper substitution.

Defendants respectfully submit that it was reversible error for the trial court to consider the merits of the motions filed by Plaintiff's former counsel after

S:\Vo - 1191\001 Doan\Pleadings - 14th Ct of Appeals No. 14-14-00994-CV\150810 Appellants Original Brief.docx

Plaintiff's death with no authority; withdraw the mistrial order granted at Plaintiff's request almost five years earlier; reinstate the jury verdict and enter judgment against Defendants based on an internally inconsistent and defective verdict, which Plaintiff's own counsel recognized in moving for mistrial. In addition, the verdict which the trial court reinstated did not accurately set forth the proper law with respect to recovery of punitive damages for failure to pay maintenance and cure. The motions seeking to set aside the mistrial order were untimely and/or waived by Plaintiff in moving for and obtaining an order of mistrial. It was extremely prejudicial and reversible error for the trial court to reinstate the jury verdict almost five years after ordering mistrial, particularly after Defendants had spent many thousands of dollars in attorneys fees and costs in discovery and other litigation expenses, in reliance on the trial court's mistrial order.

Further, Defendants submit that the reinstated is not only internally inconsistent and defective, it is unsupported by legally insufficient evidence presented at trail and contrary to the substantial evidence presented at trial and discovered after the trial, in reliance on the trial court's mistrial order, establishing that Plaintiff was not injured while in service of the vessel. In addition, reinstatement of the jury verdict is inconsistent with the trial court's rulings, long after the jury verdict and order of mistrial, denying summary judgment on

23

Defendants' liability maintenance and cure. Also, it was error for the trial court to selectively enter, at the request of Plaintiff's former counsel, judgment against Defendants on certain of the jury's findings, while ignoring or excluding other findings contained in the jury's verdict. Alternatively, the damages awarded by the jury in the reinstated verdict are excessive and/or unsupported and Plaintiff is not entitled to interest on the amounts awarded in the reinstated jury verdict or, if entitled to any interest, the interest should not accrue until entry of Final Judgment on September 16, 2014.

## ARGUMENT

**1.    The Order reinstating the jury verdict and Final Judgment are improper and procedurally defective because they were rendered in favor of a deceased plaintiff, in response to motions filed by his former counsel, without proper authority and without proper substitution of any authorized party to prosecute this case, in accordance with Rule 151 of the Texas Rules of Civil Procedure and Texas probate law.**

Plaintiff died on September 1, 2012, due to causes unrelated to the claims in this lawsuit. On September 13, 2012, former counsel for Plaintiff filed a Motion To Enter Final Judgment (CR 91) and Motion To Reconsider and Withdraw Order of Mistrial (CR 121), without informing the trial court that Plaintiff had died almost two weeks earlier, and without authorization of any party to file these motions (as counsels' former client was deceased) or substitution of any proper party to prosecute Plaintiff's claims. On August 13, 2014, former counsel for Plaintiff filed an Amended Motion To Reconsider and Withdraw Order of Mistrial and Amended Motion To Enter Final Judgment, again without substitution of any proper party to prosecute Plaintiff's claims. During the entire proceedings in the trial court, there was no party substituted to pursue these claims, as required pursuant to Rule 151 of the Texas Rules of Civil Procedure and Texas probate law.

Texas Government Code, Section 25.003(e) provides, in pertinent part, at subsections (e) and (f) as follows: "(e) In a county that has a statutory probate court, a statutory probate court is the only county court created by statute with probate jurisdiction. (f) A statutory county court does not have the jurisdiction of a

25

statutory probate court granted statutory probate courts by the Texas Probate Code." Further, the Texas Estates Code, which replaced the Texas Probate Code, effective January 1, 2014, at Sections 32.001 and 32.002, vests original and exclusive jurisdiction of "probate proceedings" in statutory probate courts in counties in which there is a statutory probate court. *See also, e.g., Palmer v. Coble Wall Trust Co.*, 851 S.W. 2d 178 (Tex. 1992). Pursuant to Section 32.005 of the Estate Code, in a county in which there is a statutory probate court the statutory probate court has exclusive jurisdiction of all probate proceedings, regardless of whether contested on uncontested. Harris County is a county in which there is a statutory probate court. "Probate proceeding," as defined in the Texas Estates Code, includes, *inter alia*: an heirship determination, the issuance of letters of administration, an action regarding an estate administration and any other matter related to the settlement, partition or distribution of an estate. Texas Estates Code, Section 31.001.

Rule 151 of the Texas Rules of Civil Procedure and Texas probate law specifically require timely substitution of a proper party to prosecute a lawsuit when a plaintiff dies. No such proper substitution was ever effected during the entire proceedings in the trial court, notwithstanding that Plaintiff died on September 1, 2012, and Defendants filed their Notice of Appeal on December 12, 2014. All or virtually all of the filings in the trial court on behalf of Plaintiff, over

26

the two-year plus period after his death and including the motions which resulted in reinstatement of a five-year-old jury verdict which had been mistried at Plaintiff's request, were procedurally improper and defective. These filings were made without proper authority of Plaintiff's former counsel and without proper substitution of any party. In fact, as later recognized by Plaintiff's former counsel, the trial court did not even have the jurisdiction to substitute any party as administrator of the Estate of Ho Kim Doan, as that power lies exclusively with the Texas probate courts. Thus, because the motions were filed without authority and without any proper substitution of any party to file them or otherwise prosecute the case in the trial court, it was error for the trial court to consider, much less grant, the motions, reinstate the mistrial order five years later and enter Final Judgment against Defendants. Reversal of the order reinstating the jury verdict and Final Judgment against Defendants is mandated for that reason alone, without even considering the numerous other problems with reinstating a jury verdict which was set aside five years earlier, at Plaintiff's request, solely because Plaintiff died for reasons unrelated to his claims herein.

**2.    It was erroneous for the trial court to reinstate a jury verdict and enter judgment based on that verdict in favor of a deceased plaintiff, who previously moved to set aside the same jury verdict approximately five years earlier, solely because Plaintiff had subsequently died. In addition, Plaintiff's motions to reinstate the jury verdict and enter judgment were untimely and waived.**

On September 12, 2012, shortly after Plaintiff died on September 1, 2012, former counsel for Plaintiff filed motions seeking withdrawal of the mistrial order; reinstatement of the jury verdict and entry of judgment against Defendants.  In those motions (CR 91, 121), former counsel for Plaintiff did not reveal to the trial court that Plaintiff had died eleven days earlier.   That fact was not disclosed by Plaintiff's former to the trial court until later.   The motions were amended by Plaintiff's former counsel, on August 13, 2014, and eventually set for hearing on September 8, 2014 (CR 134, 139).

In those motions, Plaintiff sought to have the trial court reverse a mistrial order granted *at Plaintiff's request*, years earlier.  In *State v. Meyer*, 953 S.W.2d 822 (Tex. App. – Corpus Christi 1997), the court In *Meyer*, the court squarely held that withdrawing an order of mistrial and granting an instructed verdict *more than six months* after the jury had been discharged "exceeds the boundaries of judicial propriety," and thus, "withdrawing the mistrial order was not a viable option for the trial court."   In our case, at the urging of Plaintiff's counsel, the trial court withdrew and set aside its mistrial order some five years after it was entered at Plaintiff's request, and after Defendants incurred significant fees and costs in

28

reliance upon the mistrial order. Obviously, if withdrawing an order of mistrial approximately six months after the jury had been discharged "exceeds the boundaries of judicial propriety," withdrawing a similar order of mistrial almost five years after it was entered is reversible error.

In the motions filed on these issues, Plaintiff's former counsel relied on *Jack v. Holiday World of Houston*, 262 S.W. 3d 42 (Houston District 2008), for the proposition that the trial court retained jurisdiction to rescind its mistrial order. However, the *Jacks* case involved rescission of a mistrial order *on the same day it was granted*, and with the consent of all parties. *Jacks* did not involve a very long delay between granting a mistrial and rescinding it, during which time discovery, motion practice and preparation for re-trial was conducted. In addition, Plaintiff's counsel cited a criminal case, *Rodriguez v. State*, 850 S.W.2d 516, 520, and another case, *In re Baylor Medical Center*, 280 S.W. 3rd 277 (Tex. 2008), which involved a new trial order, not a mistrial order. In both of these cases, mistrial or new trial was reversed promptly after entry of same. In the motions filed on these issues, Plaintiff's former counsel relied on one civil case, involving mistrial, *Jack v. Holiday World of Houston*, 262 S.W. 3d 42 (Houston District 2008), for the proposition that the trial court retained jurisdiction to rescind its mistrial order. However, the *Jacks* case involved rescission of a mistrial order *on the same day it was granted*, and with the consent of all parties. *Jacks* did not involve a very long

29

delay between granting a mistrial and rescinding it, during which time discovery, motion practice and preparation for re-trial was conducted. In addition, Plaintiff's counsel cited a criminal case, *Rodriguez v. State*, 850 S.W.2d 516, 520, and another case, *In re Baylor Medical Center*, 280 S.W. 3rd 277 (Tex. 2008), which involved a new trial order, not a mistrial order. In both of these cases, mistrial or new trial was reversed promptly after entry of same.

In addition, for the first time at oral argument on motions which had been pending for almost two years, former counsel for Plaintiff relied upon Rule 156 of the Texas Rules of Civil Procedure, which reads as follows:

> "When a party in a jury case dies between verdict and judgment, or a party in a non-jury case dies after the evidence is closed and before judgment is pronounced, judgment shall be entered as if all parties were living."

This rule does not allow reinstatement of a jury verdict based on a plaintiff's death in a situation where the jury verdict has been set aside by mistrial. It does not permit a plaintiff to have a jury verdict set aside and then reinstated five years later, based solely on his death. In this case, there was no jury verdict in place as of the time of Plaintiff's death, because it was set aside via the mistrial order, at the request for Plaintiff.

S:\Vo - 1191\001 Doan\Pleadings - 14th Ct of Appeals No. 14-14-00994-CV\150810 Appellants Original Brief.docx

Further, for these same reasons, Defendants submit that not only were the motions seeking reinstatement untimely, the right to seek withdrawal and reinstatement of the jury verdict, and entry of Final Judgment based on that verdict, were waived. Plaintiff moved for mistrial because he was dissatisfied with the jury verdict and specifically argued that it was internally inconsistent/defective. Almost five years later, solely because Plaintiff died, his former counsel moved to reinstate the internally inconsistent and defective verdict. As detailed below, Defendants spent many thousands of dollars on discovery and other litigation expenses, in reliance on the mistrial order which Plaintiff requested. Plaintiff conducted his own discovery and pursued motion practice, in accordance with the mistrial order he obtained. Clearly, Plaintiff waived the right to seek withdrawal of the mistrial order and entry of a jury verdict, which he previously asserted was internally inconsistent and defective in order to obtain the order of mistrial, and subsequent entry of Final Judgement based on that verdict. Accordingly, it was reversible error for the trial court to reinstate the jury verdict and enter Final Judgment against Defendants.

31

**3.     It was extremely prejudicial and erroneous for the trial court to reverse its order granting mistrial, and reinstate the jury verdict, which was set aside at Plaintiff's request approximately five years earlier, after substantial further discovery and expenditures by Defendants in defending this case, in reliance on the mistrial order granted many years ago.**

In specific reliance on the October, 2009 order of mistrial, Defendants expended more than $43,000 in attorney fees and more than $11,000 in costs/charges/ expenses relative to defending the case after mistrial was ordered (CR 251-253). This time included significant discovery pursued by Defendants, which resulted in obtaining substantial additional evidence establishing that Plaintiff was not injured while in service to Defendants' vessel (CR 254-376). Thus, it was extremely prejudiced to Defendants to grant Plaintiff's request for mistrial, reopen discovery and then reinstate the jury verdict after these large expenditures by Defendants, relying on the mistrial order. Further, the trial court gave no consideration to the dispositive evidence obtained by Defendants in reliance on the mistrial order, establishing that Plaintiff had no valid claims for maintenance and cure, much less for attorneys fees or punitive damages for failure to pay maintenance and cure. It was error for the trial court to reinstate the jury verdict five years later, after these expenditures and without even considering the evidence obtained through these expenditures and in reliance upon the mistrial order.

S:\Vo - 1191\001 Doan\Pleadings - 14th Ct of Appeals No. 14-14-00994-CV\150810 Appellants Original Brief.docx

**4.** **The reinstated verdict was unsupported by the legally insufficient evidence admitted at trial and contrary to the substantial evidence (presented at trial and discovered after the trial, in reliance on the trial court's mistrial and revised scheduling orders) establishing that Plaintiff was not injured while in service of the vessel.**

As summarized in detail in the Statement of Facts above (Appellants' Brief, pp. 14-19), there was overwhelming evidence presented at trial, and discovered by Defendants after trial in reliance on the mistrial order, establishing that Plaintiff was not injured while in service to Defendants' vessel, and thus, was not entitled to maintenance and cure. This evidence included previously undisclosed vehicular accidents involving Plaintiff, including, *inter alia,* related claims of neck injury (the same body part allegedly injured in the accident at issue herein) and representations by Plaintiff to treating health care professionals that he sustained no injuries whatsoever <u>prior</u> to these vehicular accidents, which occurred after the accident in suit. This evidence establishes that Plaintiff was not injured while employed on the vessel. There was no evidence, or alternatively, insufficient evidence, establishing Plaintiff's claims for maintenance and cure, attorneys fees or punitive damages. At the time of hiring, Plaintiff did not disclose any pre-existing injuries to the Defendants. At trial, there were medical records introduced which included an evaluation form signed by Plaintiff. On this form, Plaintiff disclosed an *auto accident* as the cause of his injuries for which he was being treated at Mana MRI, LLC, shortly after the alleged July, 2006 boat accident at

S:\Vo - 1191\001 Doan\Pleadings - 14th Ct of Appeals No. 14-14-00994-CV\150810 Appellants Original Brief.docx

issue herein. In the same document, Plaintiff denies ever having had surgery (Trial Exhibit 13). However, Plaintiff's medical records introduced at trial show that, apparently, he had multiple surgeries, including four arthroscopic procedures on November 18, 2003, June 9, 2005 and two in 2006 (Trial Exhibit 15). Plaintiff never disclosed the auto accident(s), referenced above, or any of these surgeries to Defendants. The incident that is the subject of this lawsuit occurred in mid-July, 2006. That morning, as Captain Le and the crewmembers were reeling in the shrimp nets, a new rope that was used to pull and hoist the shrimp nets onto the deck snapped.[13] As a result, the shrimp net and turtlehead fell and ricocheted off the deck of the vessel and hit Plaintiff, with little force, on the shoulder.[14] The shrimp net and turtlehead did not strike the Plaintiff directly. When a fellow crew member asked the Plaintiff if he was hurt, the Plaintiff responded, "No."[15] Following the incident, the Plaintiff rested for approximately fifteen minutes and resumed work without any complaints of the alleged injury. He jumped off the boat and went swimming almost every day after the accident.[16]    The Plaintiff

---

[13]    See trial testimony of Yen Vo Lu, Tam Van Le and Ngoi Nguyen, cited above.

[14]    See trial testimony of Tam Van Le and Ngoi Nguyen.

[15]    See trial testimony of Tam Van Le, Ngoi Nguyen and Captain Tam Le.

[16]    *Id.*

S:\Vo - 1191\001 Doan\Pleadings - 14th Ct of Appeals No. 14-14-00994-CV\150810 Appellants Original Brief.docx

never requested that he be taken back to port, and he never complained of any injuries.[17]

The U.S. Coast Guard was not even notified of the incident until July 24, 2006, when the Defendants' vessel returned to port for repairs to a damaged water pump.[18] Once the vessel was docked, the Plaintiff was informed his services were no longer needed on the Defendants' vessel. Only then did the Plaintiff notify the Coast Guard.

After the accident, Doan continued to work for 11 straight days without complaint. The boat came into port twice for repair work between the days of the accident, July 14, 2006, and July 25, 20006, and Doan did not mention any pains or injury and continued to work normally.[19] After the accident, Plaintiff dove into the water and went swimming almost every day after the incident without any sign of pain or restriction. Once when the boat came into port, Plaintiff used a large hose to load some 15,000 gallons of water on to the vessel. Trial Testimony of Ngoi Nguyen, pp. 112-115.

During trial, Hoa Ngoc Vo ("Ms. Vo" or "Hoa Vo") testified that more than one week after the accident she saw and spoke with Plaintiff when the vessel returned to Freeport to repair a water pump. She confirmed he did not appear to be

---

[17]     *Id.*

[18]     *Id.*

[19]     See trial testimony of Yen Vo Lu, Tam Van Le and Ngoi Nguyen.

S:\Vo - 1191\001 Doan\Pleadings - 14th Ct of Appeals No. 14-14-00994-CV\150810 Appellants Original Brief.docx

injured and complained of no injuries. "Everything seem to be normal with Doan." Days later, after the boat came back to Port Bolivar, Ms. Vo saw Doan again and "he walked normally" and did not appear to be hurt. Significantly, approximately one month after the alleged accident, Plaintiff approached Ms. Vo and asked her to hire him, but she told Doan that they already had enough crew. Hoa Vo further testified that about three months later (approximately four months after the accident), she saw Plaintiff at My Quang Supermarket and heard him say, **"I'm not injured. I just want to have some money."** September 23, 2009 Trial Transcript, pp. 158–167.

In addition, Plaintiff testified at trial that since the alleged incident he engaged in selling fish and shrimp to neighbors. In connection with this work, he testified that he loads up to 70 pounds of fish and shrimp onto his truck. Excerpt from September 23, 2009 Trial Transcript, pp. 42-44. Accordingly, the evidence adduced at trial is legally and factually insufficient to support the awards of maintenance and cure, attorneys fees for failure to pay maintenance and cure and punitive damages. To the contrary, the evidence adduced at trial, and discovered in reliance the trial court's mistrial order established that Plaintiff was not injured while in service of the vessel. Thus, in addition to all of the other reasons discussed herein, it was error for the trial court to reinstate the jury verdict because it was unsupported by the legally insufficient evidence presented by Plaintiff at

trial, particularly given the overwhelming presented and discovered after trial, establishing that Plaintiff was injured while in service of the vessel, and therefore entitled to no maintenance or cure, much less attorneys fees or punitive damages.

**5.      The verdict which the trial court reinstated, awarding attorneys fees and punitive damages for failure to pay maintenance and cure, are counter to and inconsistent with the trial court's post-verdict rulings denying summary judgment on maintenance and cure.**

Following the jury verdict and the Court's order of mistrial, on December 11, 2009, Plaintiff filed a motion for summary judgment, which again included maintenance and cure. Thereafter, on or about January 29, 2010, Plaintiff filed another summary judgment motion solely on the issue of maintenance and cure. By order of May 4, 2010, the Court **denied** Plaintiff's motions seeking summary judgment as to maintenance and cure, finding material factual issues as to whether Plaintiff was entitled to maintenance or cure.

Thus, the trial court specifically assessed the evidence, after the trial and jury verdict, and denied Plaintiff's motions for summary judgment on maintenance and cure. During re-opened discovery, Defendants obtained further evidence establishing that Plaintiff was *not* injured while in service on the vessel. This evidence includes two previously undisclosed vehicular accidents and specific representations by Plaintiff that he sustained no injuries to his neck prior to the vehicular accidents. Thus, it was clear error for the trial court, after ruling that there were material factual issues as to Plaintiff's entitlement to maintenance or

37

cure, to later enter judgment on the prior jury verdict. Such a action was completely inconsistent with the trial court's prior rulings, before and after the trial and verdict, denying summary judgment on maintenance on cure. The only new fact presented by Plaintiff's former counsel to the trial court, between the time of denial of the summary judgment motions, post-trial, and reinstatement and the motion seeking reinstatement of the jury verdict was the fact that Plaintiff had died. It was erroneous for the trial court to withdraw the mistrial order and enter Final Judgment, after holding that there were material factual issues as to whether Plaintiff was entitled to any maintenance or cure, much less attorneys fees or punitive damages.

**6.    As recognized by Plaintiff's counsel in seeking the original mistrial, the verdict which the trial court reinstated is legally defective because it is internally inconsistent. In addition, the verdict form and charges did not accurately set forth the proper law with respect to recovery of punitive damages for failure to pay maintenance and cure and the jury's findings are internally inconsistent.**

The verdict which the Court has reinstated is not only unsupported by evidence at trial and counter to the substantial evidence establishing that he was not injured while in service of the vessel, but is internally inconsistent and therefore must be set aside. In the verdict form (CR 385-389), in response to Question No. 1, the jury specifically found that the negligence of the F/V Larry Vo did *not* cause any injuries to Plaintiff (CR 385). Further, in response to Jury Question No. 3 (CR 387), the jury found that the unseaworthy condition of the

38

Larry VO was *not* a proximate cause of the injuries to Plaintiff. Also, in response to Question No. 4 (CR 388), the jury answered "0" to each and every question relating to what sum of money would fairly compensate Plaintiff for his injuries that resulted from the alleged incident, including the following categories of damages:

a.     Past physical pain and suffering;

b.     Future physical pain and suffering, including physical disability, impairment and inconvenience and the effect of Plaintiff's injuries on the normal pursuits and pleasures of his life;

c.     Past mental anguish and feelings of economic insecurity caused by disability;

d.     Future mental anguish and feelings of economic insecurity caused by disability;

e.     Income in the past;

f.     Impairment of earning capacity or ability in the future, including impairment in the normal progress in Kim Ho Doan's earning capacity due to his physical condition;

g.     Medical expenses in the past; and

h.     Medical expenses in the future.

Accordingly, the award of maintenance and cure is directly and internally inconsistent with the jury's findings that Plaintiff sustained no injuries, should be awarded no damages for pain and suffering (past or future), disability, impairment, inconvenience, mental anguish (past or future), lost income, lost earning capacity and incurred no medical expenses (past or future), "that resulted from the incident that occurred on or about July 19, 2006." Indeed, in asking the Court to grant a mistrial/N.J.O.V. in this case, Plaintiff's counsel acknowledged this clear inconsistency in the jury verdict, stating as follows: ". . . I want to re-urge my motion in light of what I consider to be, a miscarriage of justice. And I can point out a number of things that I think are internally inconsistent. They were required to answer Question 4. They answered by indicating "0," when, in fact, there was evidence on each and every element. And they are free to consider that, but they are not free to reject that in light of the fact that they made the determination that, in fact, Doan was injured." Trial Transcript of proceedings held on September 24, 2009, p. 58. Thus, Plaintiff's own counsel, in moving for mistrial/J.N.O.V., recognized that the jury verdict is internally inconsistent on material findings. Indeed, this was a basis for Plaintiff to seek mistrial. Clearly, thus, it was improper for Plaintiff's counsel to argue defects in the verdict/internal inconsistency in order to obtain a mistrial, and later move to have the defective verdict reinstated.

S:\Vo - 1191\001 Doan\Pleadings - 14th Ct of Appeals No. 14-14-00994-CV\150810 Appellants Original Brief.docx

There are other material inconsistencies in the verdict. The jury awarded Plaintiff $4,000.00 in attorneys fees for failure to pay maintenance and cure. This award is directly and internally inconsistent with the jury's specific finding that Plaintiff incurred and was entitled to no medical expenses (past or future) as a result of the incident, sustained no injuries and was entitled to no general or special damages whatsoever. (Cr 385-88, Question Nos. 1, 3 and 4.) Further, there was no evidence, or insufficient evidence, establishing that any failure to pay maintenance or cure was unreasonable, arbitrary or willful and resulted in injury to Plaintiff.

Moreover, the jury awarded $57,500.00 in punitive damages. This award is completely inconsistent with the jury's findings in Question Nos. 1, 3 and 4 that no negligence or unseaworthiness by the F/V Larry Vo caused or was a proximate cause of any injuries to Plaintiff. Accordingly, Plaintiff, through counsel, has admitted that the jury verdict is internally inconsistent on material findings and this was a basis for moving for mistrial. Apparently because he realized and was aware of the internal inconsistencies in the verdict, counsel for Plaintiff, in seeking reinstatement and Final Judgment, submitted only *select* jury findings to be included in the Final Judgment.

In addition to the jury findings, there were defects in the charge and verdict form. The jury found that the M/V Larry Vo acted willfully, arbitrarily or with

callous disregard in failing to pay maintenance and cure, and awarded $4,000.00 in attorneys fees for such action (Jury Question Nos. 10 and 11). Further, the jury awarded an additional $57,500.00 in punitive damages, although there was no jury charge on punitive damages and the jury interrogatories did not accurately set forth prevailing law. However, the jury charge did not address punitive damages, and, along with Jury Question No. 12, was not in accordance with prevailing maritime law on recovery of punitive damages for failure to pay maintenance and cure. Instead, Jury Question No. 12 is framed in terms of punitive damages based on *general maritime law* or *unseaworthiness* and is clearly defective and unsupported by law. For these reasons, the internal inconsistencies/defects in the verdict, recognized by Plaintiff's counsel in moving for mistrial, and the punitive damage charge, it was error for the trial court to reinstate the jury verdict.

7. **It was error for the trial court, in its Final Judgment and at the request of Plaintiff's counsel, to selectively enter judgment on certain of the jury's findings, as set forth in its verdict, while excluding other findings of the jury's verdict.**

As amplified above, in entering Final Judgment, at the request of Plaintiff's former counsel, the Court has "carved out" certain of the jury's verdict/findings and adopted others. This selective Final Judgment, adopting certain aspects of the jury's verdict, but not including others, is procedurally and legally erroneous ( See CR 139-173, 189.

S:\Vo - 1191\001 Doan\Pleadings - 14th Ct of Appeals No. 14-14-00994-CV\150810 Appellants Original Brief.docx

**8.** **Alternatively, the damages by the jury in the reinstated verdict are excessive and/or unsupported and Plaintiff is not entitled to interest on the amounts awarded in the reinstated jury verdict or, if entitled to any interest, the interest should not accrue between the time mistrial was ordered and Final Judgment.**

For all of the many reasons set forth above, it was error for the trail court to withdraw the mistrial order and enter Final Judgement against Defendants five years after granting mistrial at Plaintiff's request. Alternatively, the damages awarded by the jury are excessive. The jury awarded $51,551.40 for medical treatment, which is inconsistent with other jury findings, unsupported in the record or not sufficiently supported, and includes an alleged future surgery. Plaintiff never underwent any such surgery and is now deceased. Further, the jury awarded maintenance of $21,480.00, which is supported by no or insufficient evidence. There was no, or insufficient basis or evidence, to award any attorneys fees because Plaintiff failed to establish willful or arbitrary failure to pay maintenance and cure. Further, again, the award of $57,500.00 for punitive damages is inconsistent with other jury findings and supported by no or insufficient evidence. There was no or insufficient evidence of willful or wanton conduct.

As amplified above, in reliance upon the Court's mistrial order, Defendants discovered new evidence establishing that plaintiff was not injured while in service of the vessel; that he was not entitled to maintenance or cure and that Defendants did not act willfully in failing to pay maintenance and cure or otherwise. Thus, if

43

any amounts are awarded, certainly such amounts should not include any attorneys fees or punitive damages.

In addition, Plaintiff should not be awarded interest on the amounts included in the judgment because the awards included maintenance and cure, attorneys fees and punitive damages.  Further, as Plaintiff's counsel acknowledged at oral argument on the motions seeking reinstatement of the jury verdict and entry of Final Judgment, Plaintiff is not entitled to any prejudgment interest.  The exchange between Plaintiff's counsel and the trial court is as follows:

"THE COURT:  But -- but then they're also at a dis -- having to discover the case more.  I mean, I -- recognize  this is a significant amount of time, right, five years.  Isn't that a problem, Mr. Murray?

MR. MURRAY:  It's a problem for the Plaintiff because you don't get prejudgment interest in a Jones Act case.  So, I get no benefit from going back."

Accordingly, if this Honorable Court allows the Final Judgment to stand, notwithstanding all of the issues set forth above, no interest should be included, or in the further alternative, no prejudgment interest should be awarded.

S:\Vo - 1191\001 Doan\Pleadings - 14th Ct of Appeals No. 14-14-00994-CV\150810 Appellants Original Brief.docx

## PRAYER FOR RELIEF

WHEREFORE, PREMESIS CONSIDERED, Appellants pray that the Court:

1) Reverse the trial court's order withdrawing its mistrial order and reinstating the jury verdict;

2) Reverse the trial court's Final Judgment against Appellants in its entirety;

3) Render judgment in favor of Appellants, dismissing all claims against Appellants, with prejudice;

4) Alternatively, providing to Appellants the relief requested in Prayer Nos. 1 and 2 above, and remand the case to the trial court for further proceedings consistent with these rulings, including but not limited to, trial of this case.

5) In the further alternative, reverse and revise the judgment against Defendants to include maintenance and cure only, and no interest;

6) In the further alternative, reverse and revise the judgment against Defendants to include maintenance and cure only, and interest from entry of judgment only, with no prejudgment interest;

7) Grant Appellants such other and further relief to which they may be entitled.

45

Respectfully submitted:

By: *Thomas P. Henican*
Marguerite K. Kingsmill
(Texas Bar No. 00788902)
Christy R. Bergeron
(Texas Bar No. 24044582)
Thomas P. Henican
(Texas Bar No. 24075926*)*
KINGSMILL RIESS, L.L.C.
201 St. Charles Avenue, Suite 3300
New Orleans, Louisiana 70170-3300
Telephone: (504) 581-3300
Telecopier: (504) 581-3310
***Attorneys for Appellants, Andrew T. Vo d/b/a Larry Vo, Andrew T. Vo, Viet Le, and Tam Van Le***

46

## CERTIFICATE OF SERVICE

I certify that on August 10, 2015, a copy of this brief was served by e-service e-mail to the following counsel:

| | |
|---|---|
| Mark T. Murray | Robert S. Kwok |
| Stevenson & Murray | William W. Hoke |
| 24 Greenway Plaza, Suite 750 | Robert Kwok & Associates, L.L.P. |
| Houston, Texas 77046 | 6588 Corporate Dr., Suite 300 |
| | Houston, TX 77036 |

*Thomas P. Henican*_____
Thomas P. Henican, Counsel for Appellants

## CERTIFICATE OF COMPLIANCE

Based on a word count run in Microsoft Word, this Appellants' Brief contains 10,159 words, including all sections of the brief, whether or not exempt from the word count under Texas Rule of Civil Procedure 9.4.

*Thomas P. Henican*_____
Thomas P. Henican, Counsel for Appellants

47

**APPENDIX**

**A. Trial Court's Order on Plaintiff's Motion to Enter Final Judgment**

**B. Trial Court's Final Judgment**

**C. Jury Charge and Verdict**

# EXHIBIT A

Filed 12 September 13 P2:57
Chris Daniel - District Clerk
Harris County
ED101J017076389
By: Wanda Chambers

NO. 2007-19358

P-1

EJUDX

S11PX

| | | |
|---|---|---|
| HO KIM DOAN | § | IN THE DISTRICT COURT OF |
| | § | |
| VS. | § | HARRIS COUNTY,   TEXAS |
| | § | |
| ANDREW T. VO D/B/A LARRY VO | § | 129TH  JUDICIAL DISTRICT |

ORDER ON PLAINTIFF'S MOTION TO ENTER FINAL JUDGMENT

BE IT REMEMBERED that upon the day and date shown hereinbelow came on for consideration Plaintiff's Motion to reconsider the motion for mistrial, withdraw its order of mistrial and enter final judgment based on the charge of the Court answered by the jury; the Court, having considered the pleadings and the evidence, finds said motion to be with merit; it is, therefore

ORDERED that the order of mistrial is withdrawn and set aside, the verdict received on or about September 24, 2009, is reinstated and final judgment based on the charge of the court, as answered by the jury, be entered herein.

SIGNED on this the 16 day of September, 2014.

SEP 1 6 2014

_____
JUDGE PRESIDING

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging

188

# EXHIBIT B

P-4 / 9A / DC

NO. 2007-19358

| | | |
|---|---|---|
| HO KIM DOAN | § | IN THE DISTRICT COURT OF |
| | § | |
| VS. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ANDREW T. VO D/B/A LARRY VO | § | 129TH JUDICIAL DISTRICT |

## FINAL JUDGMENT

On September 22, 2009, the Court called this case for trial. Plaintiff, Ho Kim Doan, appeared in person and through his attorneys, announced ready for trial Defendants appeared through their respective representatives and through their attorney and announced ready for trial.

Thereafter the Court empaneled and swore in the jury. In turn, the jury heard evidence and argument of counsel. At the close of all evidence, The Court submitted its Charge, containing instructions, definitions, and questions to the jury. The Charge of the Court contained the following answers:

Question No. 2:

Do you find that the F/V LARRY VO was unseaworthy at the time of the incident that occurred on or about July 19, 2006:

Answer: Yes.

Question No. 5:

Do you find that F/V LARRY VO owes maintenance and cure to Kim Ho Doan?

Answer: Maintenance: Yes/Cure: Yes.

Question No. 6:

On what date do you find that F/V LARRY VO's obligation to pay maintenance and cure to Kim Ho Doan began:

Answer: July 19, 2006.

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging

<u>Question No. 7</u>:

Do you find that Kim Ho Doan has reached maximum cure? "Maximum cure" means the point at which no further improvement in the seaman's medical condition may be reasonably be expected.

Answer: Yes.

<u>Question No. 8</u>:

On what date do you find that Kim Ho Doan has reached in the past, or will in the future reach, maximum cure?

Answer: July 5, 2008.

<u>Question No. 9</u>:

What sum of money, if paid now in cash, would fairly and reasonably compensate Kim Ho Doan for (a) maintenance, and (b) cure?

"Maintenance" means the amount that would be necessary to provide the seaman with food and lodging comparable to the quality of food and lodging afforded to the seaman aboard the Vessel for the time between the date the seaman leaves the Vessel until he reaches maximum cure.

"Cure" includes the cost of medical attention, including the services of physicians and nurses, as well as the cost of hospitalization, medicine and medical apparatus incurred by the seaman from the date he leaves the Vessel until he reached maximum cure.

Consider the elements listed below and none other. Consider each element separately. Do not award any sum of money on any element if you have otherwise under some other element, awarded a sum of money for the same loss. That is, do not compensate twice for the

2

190

same loss, if any. Do not include the interest on any amount you find.

Answer separately, in dollars and cents, for the elements listed below, if any.

Answer in dollars and cents, if any.

Answer: (a) Maintenance: $21,480.00; (b) Cure: $51,551.40

Question No. 10: Do you find that F/V LARRY VO acted willfully, arbitrarily, or will callous disregard in failing to pay maintenance and cure to Kim Ho Doan:

Answer: Yes.

Questions No. 11: What is a reasonable fee for the necessary services of Kim Ho Doan's attorney in this case, stated in dollars and cents?

Answer: $4,000.00

Question No. 12: 1. Under General Maritime Law: You may but are not required to award punitive damages against a defendant who has acted willfully and wantonly. The purpose of an award of punitive damage is to punish the defendant and to deter him and others from acting as he did.

As a person willfully and wantonly if he acts in reckless or callous disregard of, or with indifference to, the rights of the plaintiff. An actor is indifferent to the rights of another, regardless of the actor's state of mind, when he proceeds in disregard of a high and excessive degree of danger that is known to him or was apparent to a reasonable person in his position.

2.      Unseaworthiness: You may, but are not required to award punitive damages if you find that the ship owner, F/V LARRY VO, wantonly or willfully failed to provide the plaintiff with a seaworthy vessel, and that failure was a proximate cause of the plaintiff's injuries.

3

**Answer: $57,500.00.**

Court enters this final judgment in this matter in favor of the plaintiff and against defendants, awarding all money damages set out above by the jury findings in the amount of one hundred thirty-four thousand five hundred thirty-one dollars and forty cents ($134,531.40), and to include all costs of Court, mediation expenses, and all interest permitted by law. This is a final appealable judgment, it disposes of all claims and parties, and is appealable

Let execution issue.

September 16, 2014

SEP 1 6 2014

_____
JUDGE PRESIDING

192

# EXHIBIT C

ORIGINAL

NO. 2007-19358

| HO KIM DOAN, | § | IN THE DISTRICT COURT OF |
| Plaintiff, | § | |
| | § | |
| | § | |
| vs. | § | HARRIS COUNTY,   T E X A S |
| | § | |
| ANDREW T. VO D/B/A LARRY VO, | § | |
| Defendant. | § | 129TH   JUDICIAL DISTRICT |

FILED
Loren Jackson
District Clerk
SEP 24 2009
Time:
Harris County, Texas
By_____ Deputy

## CHARGE OF THE COURT

**LADIES AND GENTLEMEN OF JURY:**

This case is submitted to you by asking questions about the facts which you must decide from the evidence you have heard in this trial.  You are the sole judges of the credibility of the witnesses and the weight to give their testimony, but in matters of law, you must be governed by the instructions in this charge.  In discharging your responsibility on this jury, you will observe all of the instructions which have previously been given to you.  I shall now give you additional instructions which you should carefully and strictly follow during your deliberations.

1.      Do not let bias, prejudice, or sympathy play any part in your deliberations.

2.      In arriving at your answers, consider only the evidence introduced here under oath and such exhibits as have been introduced for your consideration under the rulings of the court, that is, what you have seen and heard in this courtroom, together with the law as given you by the court.  In your deliberations, you will not consider or discuss anything that is not represented by the evidence in this case.

3.      Since every answer that is required by this charge is important, no juror should state or consider that any required answer is not important.

4.      You must not decide who you think should win, and then try to answer the questions accordingly.  Simply answer the questions, and do not discuss nor concern yourselves with the effect of your answers.

5.      You will not decide the answer to a question by lot or by drawing straws, or by any other method of chance.  Do not return a quotient verdict.  A quotient verdict means that the jurors agree to abide by the result to be reached by adding together each juror's figures and dividing by the number of jurors to get an average.  Do not do any trading on your answers; that is, one juror should not agree to answer a certain question one way if others will agree to answer another question another way.

6.      Unless otherwise instructed, you may render your verdict upon the vote of ten or more members of the jury.  The same ten or more of you must agree upon all of the answers

1

```
EXHIBIT
2
```

RECORDER'S MEMORANDUM:
This instrument is of poor quality
and not satisfactory for photographic
recordation and/or alterations were
present at the time of filming

APPENDIX C          377

made and to the entire verdict. You will not, therefore, enter into an agreement to be bound by a majority or any other vote of less than ten jurors. If the verdict and all of the answers therein are reached by unanimous agreement, the presiding juror shall sign the verdict for the entire jury. If any juror disagrees as to any answer made by the verdict, those jurors who agree to all findings shall each sign the verdict.

These instructions are given you because your conduct is subject to review the same as that of the witnesses, parties, attorneys, and the judge. If it should be found that you have disregarded any of these instructions, it will be jury misconduct and it may require another trial by another jury; then all of our time will have been wasted. The presiding juror or any other who observes a violation of the court's instructions shall immediately warn the one who is violating the same and caution the juror not to do so again.

Any notes you have taken are for your own personal use and may be taken back into the jury room and consulted by you during deliberations, but do not show or read your notes to your fellow jurors during your deliberations. Your notes are not evidence. Each of you should rely upon your independent recollection of the evidence and not be influenced by the fact that another juror has taken notes.

When words are used in this charge in a sense that varies from the meaning commonly understood, you are given a proper legal definition, which you are bound to accept in place of any other meaning.

Answer "Yes" or "No" to all questions unless otherwise instructed. A "Yes" answer must be based on a preponderance of the evidence. If you do not find that a preponderance of the evidence supports a "Yes" answer, then answer "No."

The term "preponderance of the evidence" means the greater weight of credible evidence admitted in this case. A preponderance of the evidence is not measured by the number of witnesses or by the number of documents admitted in evidence. For a fact to be proved by a preponderance of the evidence, you must find that the fact is more likely true than not true. Whenever a question requires an answer other than a "Yes" or "No" answer, your answer must be based on a preponderance of the evidence.

A fact may be established by direct evidence or by circumstantial evidence or both. A fact is established by direct evidence when proved by documentary evidence or by witnesses who saw the act done or heard the words spoken. A fact is established by circumstantial evidence when it may be fairly and reasonably inferred from other facts proved.

For purposes of the following questions, ANDREW T. VO, Individually and d/b/a F/V Larry Vo, VIET LE, Tam Van Le, and VO-LE INC. are to be treated as one entity and are referred to collectively as "F/V LARRY VO"

2

378

## DEFINITIONS AND INSTRUCTIONS

*Seaman Status*

Kim Ho Doan is seeking damages from F/V LARRY VO for injuries that he allegedly suffered as a result of an incident while he was performing his duties as a crew member aboard the F/V LARRY VO.

One of Kim Ho Doan's claims against F/V LARRY VO is for Jones Act negligence.

Under the Jones Act, Kim Ho Doan must prove that his employer was negligent. Negligence is the doing of an act that a reasonably prudent person would not do, or the failure to do something that a reasonably prudent person would do, under the same or similar circumstances. The occurrence of an accident, standing alone, does not mean anyone's negligence caused the accident.

It includes any breach of duty that an employer owes to his employees who are seamen, including the duty of providing for the safety of the crew.

Under the Jones Act, if the employer's negligent act caused the plaintiff's injury, in whole or in part, then you must find the employer is liable under the Jones Act.

Negligence under the Jones Act may consist of a failure to comply with a duty required by law. Employers of seamen have a duty to provide their employees with a reasonably safe place to work. If you find that Kim Ho Doan was injured because F/V LARRY VO failed to furnish him with a reasonably safe place to work, and that Kim Ho Doan's working conditions could have been made safe through the exercise of reasonable care, then you must find that F/V LARRY VO was negligent.

The fact that F/V LARRY VO conducted its operations in a manner similar to that of other companies is not conclusive as to whether F/V LARRY VO was negligent or not.

You must determine if the operation in question was reasonably safe under the circumstances. The fact that a certain practice has been continued for a long period of time does not necessarily mean that it is reasonably safe under all circumstances. A long accepted practice may be an unsafe practice. However, a practice is not necessarily unsafe or unreasonable merely because it injures someone.

A seaman's employer is legally responsible for the negligence of one of his employees while that employee is acting within the course and scope of his employment.

If you find from a preponderance of the evidence that F/V LARRY VO assigned Kim Ho Doan to perform a task that Kim Ho Doan was not adequately trained to perform, you must find that F/V LARRY VO was negligent.

3

379

*Unseaworthiness*

Kim Ho Doan seeks damages for personal injury that he claims was caused by the unseaworthiness of the F/V LARRY VO.

Liability for an unseaworthy condition does not in any way depend upon negligence or fault or blame. That is to say, the ship owner or vessel owner is liable for all injuries and consequent damages proximately caused by an unseaworthy condition existing at any time, even though the owner may have exercised due care under the circumstances, and may have had no notice or knowledge of the unseaworthy condition which proximately caused the injury or damage.

Defective equipment or unsafe conditions aboard the vessel may render the vessel unseaworthy.

Now, to recover for unseaworthiness, the plaintiff must prove not only that he was injured on an unseaworthy vessel but that his injury was a proximate result of the unseaworthiness.

A Vessel owner owes to every member of the crew employed on its Vessel the absolute duty to keep and maintain the Vessel, and all decks and passageways, appliances, gear, tools, parts and equipment of the Vessel in a seaworthy condition at all times.

A seaworthy Vessel is one that is reasonably fit for its intended use. The duty to provide a seaworthy Vessel is absolute because the owner may not delegate that duty to anyone. Liability for an unseaworthy condition does not in any way depend upon negligence or fault or blame. If an owner does not provide a seaworthy Vessel - a Vessel that is reasonably fit for its intended use - no amount of care or prudence excuses the owner.

The duty to provide a seaworthy Vessel includes a duty to supply an adequate and competent crew. A Vessel may be unseaworthy even though it has a numerically adequate crew, if too few persons are assigned to a given task.

However, the owner of a Vessel is not required to furnish an accident free Vessel. He need only furnish a Vessel and its appurtenances that are reasonably fit for their intended use and a crew that is reasonably adequate for its assigned tasks.

The Vessel owner is not required to provide the best appliances and equipment, or the finest of crews on his Vessel. He is only required to provide gear that is reasonably proper and suitable for its intended use, and a crew that is reasonably adequate.

In summary, if you find that the owner of the Vessel did not provide an adequate crew of sufficient manpower to perform the tasks required, or if you find that the Vessel was in any manner unfit in accordance with the law as I have just explained it to you and that this was a proximate cause of Kim Ho Doan's injury, a term I will explain to you, then you may find that

4

Unofficial Copy Office of the Chris Daniel District Clerk

380

the Vessel was unseaworthy and the Vessel owner liable, without considering any negligence on the part of the owner or any of its employees.

However, if you find that the owner had a capable crew and appliances and gear that were safe and suitable for their intended use, then the Vessel was not unseaworthy and the owner of the Vessel is not liable to Kim Ho Doan on the claim of unseaworthiness.

Maintenance and Cure

Another of Kim Ho Doan's claims against F/V LARRY VO is for maintenance and cure.

Kim Ho Doan, as a seaman, is entitled to recover maintenance and cure. This claim is separate and independent from both the Jones Act and the unseaworthiness claims of Kim Ho Doan. You must decide this claim separately from your determination of his Jones Act and unseaworthiness claims.

Maintenance and cure is a seaman's remedy. If you determine that Kim Ho Doan was a seaman, you then must determine if he is entitled to maintenance and cure.

Maintenance and cure provides a seaman, who is disabled by injury or illness while in the service of the Vessel, medical care and treatment, and the means of maintaining himself, while recuperating.

A seaman is entitled to maintenance and cure even though he was not injured as a result of any negligence on the part of his employer or any unseaworthy condition of the Vessel. To recover maintenance and cure, Kim Ho Doan need only show that he suffered injury or illness while in the service of the Vessel on which he was employed as a seaman, without willful misbehavior on his part. The injury or illness need not be work related, it need only occur while the seaman is in the service of the Vessel. And maintenance and cure may not be reduced because of any negligence on the part of the seaman.

The "cure" to which a seaman may be entitled includes the cost of medical attention, including the services of physicians and nurses as well as the cost of hospitalization, medicines and medical apparatus. However, the employer does not have a duty to provide cure for any period of time during which a seaman is hospitalized at the employer's expense.

Maintenance is the cost of food and lodging, and transportation to and from a medical facility. A seaman is not entitled to maintenance for that period of time that he is an inpatient in any hospital, because of the cure provided by the employer through hospitalization includes the food and lodging of the seaman.

5

Uncertified Copy — Not an Official Court Copy of the Copies on file in this Daniel District Clerk

381

A seaman is entitled to receive maintenance and cure from the date he leaves the Vessel until he reaches the point of what is called "maximum cure." Maximum cure is the point at which no further improvement in the seaman's medical condition is reasonably expected. Thus, if it appears that a seaman's condition is incurable, or that the treatment will only relieve pain but will not improve a seaman's physical condition, he has reached maximum cure. The obligation to provide maintenance and cure usually ends when qualified medical opinion is to the effect that maximum possible cure has been accomplished.

If you decide that Kim Ho Doan is entitled to maintenance and cure, you must determine when the employer's obligation to pay maintenance began, and when it ends. One factor you may consider in determining when the period ends is the date when Kim Ho Doan resumed his employment, if he did so. However, if the evidence supports a finding that economic necessity forced Kim Ho Doan to return to work prior to reaching maximum cure, you may take that finding into consideration in determining when the period for maintenance and cure ends.

If you find that Kim Ho Doan is entitled to an award of damages under either the Jones Act or unseaworthiness claims, and if you award him either lost wages or medical expenses, then you may not award him maintenance and cure for the same period of time. That is because Kim Ho Doan may not recover twice for the same loss of wages or medical expenses. However, Kim Ho Doan may also be entitled to an award of damages for failure to pay maintenance and cure when it was due.

A Vessel owner who has received a claim for maintenance and cure is entitled to investigate the claim. However, if after investigating the claim, the Vessel owner unreasonably rejects the claim for maintenance and cure, he is liable for both the maintenance and cure payments he should have made, and any compensatory damages caused by his unreasonable failure to pay. Compensatory damages may include any aggravation of Kim Ho Doan's condition because of the failure to provide maintenance and cure.

Thus, you may award compensatory damages because the Vessel owner failed to provide maintenance and cure if you find by a preponderance of the evidence that:

1. Kim Ho Doan was entitled to maintenance and cure;

2. It was not provided;

3. F/V KARRY VO acted unreasonably in failing provide maintenance and cure; and

4. The failure to provide the maintenance and cure resulted in some injury to Kim Ho Doan.

6

Unofficial Copy Office of the Clerk of this District Disfavor

If you also find that the Vessel owner's failure to pay maintenance and cure was not only unreasonable, but was willful, that is, with the deliberate intention to do so, you may also award Kim Ho Doan attorney's fees. However, you should not award attorney's fees unless the Vessel owner acted willfully in disregard of the seaman's claim for maintenance and cure. Kim Ho Doan may not recover attorney's fees for the prosecution of the Jones Act or unseaworthiness claims. Thus, you may award only those attorney's fees Kim Ho Doan incurred in pursuing the maintenance and cure claim and only if you find that the Vessel owner acted willfully in failing to pay maintenance and cure.

Kim Ho Doan may not recover attorney's fees for the prosecution of the Jones Act or unseaworthiness claims. You may award attorney's fees only if you find that the Vessel owner acted arbitrarily or with callous disregard, in failing to pay maintenance and cure.

*Negligence Under the General Maritime Law*

Kim Ho Doan's claims against F/V LARRY VO is for negligence under the general maritime law.

Negligence under the general maritime law is the doing of an act that a reasonably prudent person would not do, or the failure to do something that a reasonably prudent person would do, under the same or similar circumstances. The occurrence of an accident, standing alone, does not mean anyone's negligence caused the accident.
Causation

Not every injury that follows an accident necessarily results from it. The accident must be the cause of the injury.

In determining causation, a different rule applies to the Jones Act claim and to the unseaworthiness and negligence claims under the general maritime law.

In an unseaworthiness claim, Kim Ho Doan must show, not merely that the unseaworthy condition was a cause of the injury, but that such condition was a proximate cause of it. This means that Kim Ho Doan must show that the condition in question was a substantial factor in bringing about or actually causing his injury, and that the injury was either a direct result or a reasonably probable consequence of the condition.

In a negligence claim under the general maritime law, Kim Ho Doan must show, not merely that the negligence was a cause of the injury, but that such act or omission was a proximate cause of it. This means that Kim Ho Doan must show that the act or omission in question was a substantial factor in bringing about or actually causing his injury, and that the injury was either a direct result or a reasonably probable consequence of the act or omission.

7

Certified copy of the original Office of Chris Daniel District Clerk

383

*Damages*

If you find a Defendant or Defendants are liable, you must award the amount you find by a preponderance of the evidence as full and just compensation for all of Kim Ho Doan's damages. Compensatory damages are not allowed as a punishment against a party. Such damages cannot be based on speculation, for it is only actual damages—what the law calls compensatory damages—that are recoverable. However, compensatory damages are not restricted to actual loss of time or money; they include both the mental and physical aspects of injury, tangible and intangible. They are an attempt to make Kim Ho Doan whole, or to restore him to the position he would have been in if the incident had not happened.

You should consider the following elements of damages, to the extent you find that Kim Ho Doan has established such damages by a preponderance of the evidence: physical pain and suffering including physical disability, impairment, and inconvenience, and the effect of Kim Ho Doan's injuries and inconvenience on the normal pursuits and pleasures of life; mental anguish and feelings of economic insecurity caused by disability; income loss in the past; impairment of earning capacity or ability in the future, including impairment in the normal progress in Kim Ho Doan's earning capacity due to his physical condition; post-medical expenses; the reasonable value, not exceeding actual cost to Kim Ho Doan, of medical care that you find from the evidence will be reasonably certain to be required in the future as a proximate result of the injury in question.

Some of these damages, such as mental or physical pain and suffering, are intangible things about which no evidence of value is required. In awarding these damages, you are not determining value, but you should award an amount that will fairly compensate Kim Ho Doan for his injuries.

Any award you make to Kim Ho Doan is not subject to income tax; neither the state nor the federal government will tax it. Therefore, you should determine the amount that Kim Ho Doan is entitled to receive without considering the effect of taxes upon it.

*Loss of Future Earnings*

If you find that Kim Ho Doan is entitled to an award of damages for loss of future earnings, there are two particular factors you must consider. First, you should consider loss after income taxes; that is, you should determine the actual or net income that Kim Ho Doan has lost or will lose, taking into consideration that any past or future earnings would be subject to income taxes. You must award Kim Ho Doan only his net earnings after tax. This is so because any award you make here is not subject to income tax. The federal or state government will not tax any amount which you award on this basis.

Second, an amount to cover a future loss of earnings is more valuable to Kim Ho Doan if he received the amount today than if he received the same amount in the future. Therefore, if you decide to award Kim Ho Doan an amount for lost future earnings, you must discount it to present value by considering what return would be realized on a relatively risk free investment.

8

## QUESTION NO. 1

Did the negligence, if any, of those named below cause the injuries to Kim Ho Doan?

When considering the negligence, if any, by F/V LARRY VO, consider the acts or omissions of its respective agents, employees, representatives, or servants.

Answer "Yes" or "No" for each of the following:

F/V LARRY VO                  _____No_____

Unofficial Copy Office of Chris Daniel District Clerk

9

385

## QUESTION NO. 2

Do you find that the F/V LARRY VO was unseaworthy at the time of the incident that occurred on or about July 19, 2006?

Answer "Yes" or "No."

ANSWER: _____Yes_____

Unofficial Copy Office of Chris Daniel District Clerk

10

386

If you answered "Yes" to Question No. 2, then answer the following question. Otherwise, do not answer the following question.

## QUESTION NO. 3

Do you find that the unseaworthy condition of the F/V LARRY VO was a proximate cause of the injuries to Kim Ho Doan?

Answer "Yes" or "No."

ANSWER: _____No_____

11

387

## QUESTION NO. 4

What sum of money, if paid now in cash, would fairly and reasonably compensate Kim Ho Doan for his injuries, if any, that resulted from the incident that occurred on or about July 19, 2006?

Consider the elements of damages listed below and none other. Consider each element separately. Do not award any sum of money on any element if you have otherwise, under some other element, awarded a sum of money for the same loss. That is, do not compensate twice for the same loss, if any. Do not include interest on any amount of damages you find.

Answer separately, in dollars and cents, for damages, if any. Do not reduce the amounts, if any, in your answers because of the negligence, if any, of Kim Ho Doan.

a.  Past physical pain and suffering including physical disability, impairment, and inconvenience, and the effect of Kim Ho Doan's injuries and inconvenience on the normal pursuits and pleasures of life.

ANSWER:  _____ - 0 - _____

b.  Future physical pain and suffering including physical disability, impairment, and inconvenience, and the effect of Kim Ho Doan's injuries and inconvenience on the normal pursuits and pleasures of life.

ANSWER:  _____ - 0 - _____

c.  Past mental anguish and feelings of economic insecurity caused by disability.

ANSWER:  _____ - 0 - _____

d.  Future mental anguish and feelings of economic insecurity caused by disability.

ANSWER:  _____ - 0 - _____

e.  Income loss in the past.

ANSWER:  _____ - 0 - _____

f.  Impairment of earning capacity or ability in the future, including impairment in the normal progress in Kim Ho Doan's earning capacity due to his physical condition.

ANSWER:  _____ - 0 - _____

12

Unofficial Copy Office of Chris Daniel District Clerk

388

g.     Medical expenses in the past.

       ANSWER: _____ ⌣ ɔ ‑‑ _____

h.     Medical expenses in the future.

       ANSWER: _____ ‑ ͼ ‑ _____

Unofficial Copy Office of Chris Daniel District Clerk

13

## QUESTION NO. 5

Do you find that F/V LARRY VO owes maintenance and cure to Kim Ho Doan?

ANSWER "Yes" or "No" for each of the following:

Maintenance: _____Yes_____

Cure: _____Yes_____

Unofficial Copy Office of Chris Daniel District Clerk

14

## QUESTION NO. 6

On what date do you find that F/V LARRY VO's obligation to pay maintenance and cure to Kim Ho Doan began?

Answer by giving a month, day, and year.

ANSWER: ___July 19, 2006___

Unofficial Copy Office of Chris Daniel District Clerk

15

## QUESTION NO. 7

Do you find that Kim Ho Doan has reached maximum cure?

"Maximum cure" means the point at which no further improvement in the seaman's medical condition may reasonably be expected.

Answer "Yes" or "No."

ANSWER: _____Yes_____

Unofficial Copy Office of Chris Daniel District Clerk Daniel District Clerk

16

392

## QUESTION NO. 8

On what date do you find that Kim Ho Doan has reached in the past, or will in the future reach, maximum cure?

Answer by giving a month, day, and year.

ANSWER: _July 5, 2008_

Unofficial Copy Office of Chris Daniel District Clerk

17

393

QUESTION NO. 9

What sum of money, if paid now in cash, would fairly and reasonably compensate Kim Ho Doan for (a) maintenance, and (b) cure?

"Maintenance" means the amount that would be necessary to provide the seaman with food and lodging comparable to the quality of food and lodging afforded to the seaman aboard the Vessel for the time between the date the seaman leaves the Vessel until he reaches maximum cure.

"Cure" includes the cost of medical attention, including the services of physicians and nurses, as well as the cost of hospitalization, medicine and medical apparatus incurred by the seaman from the date he leaves the Vessel until he reached maximum cure.

Consider the elements listed below and none other. Consider each element separately. Do not award any sum of money on any element if you have otherwise, under some other element, awarded a sum of money for the same loss. That is, do not compensate twice for the same loss, if any. Do not include interest on any amount you find.

Answer separately, in dollars and cents, for the elements listed below, if any.

Answer in dollars and cents, if any.

ANSWER:

(a)     Maintenance          $ 21,480.00

(b)     Cure                      $ 51,551.40

18

Unofficial Copy Office of Chris Daniel District Clerk

## QUESTION NO. 10

Do you find that F/V LARRY VO acted willfully, arbitrarily, or with callous disregard in failing to pay maintenance and cure to Kim Ho Doan?

ANSWER "Yes" or "No."

ANSWER: _____Yes_____

Unofficial Copy Office of Chris Daniel District Clerk

19

If you have answered "Yes" to Question No. 10, then answer the following question. Otherwise, do not answer the following question.

## QUESTION NO. 11

What is a reasonable fee for the necessary services of Kim Ho Doan's attorney in this case, stated in dollars and cents?

Answer in dollars and cents.

ANSWER: $ 4,000.00



20

If you have answered "Yes" to Question No. 10, then answer the following question. Otherwise, do not answer the following question.

## QUESTION NO. 12

1.  Under General Maritime Law

You may but are not required to award punitive damages against a defendant who has acted willfully and wantonly. The purpose of an award of punitive damages is to punish the defendant and to deter him and others from acting as he did.

As a person acts willfully and wantonly if he acts in reckless or callous disregard of, or with indifference to, the rights of the plaintiff. An actor is indifferent to the rights of another, regardless of the actor's state of mind, when he proceeds in disregard of a high and excessive degree of danger that is known to him or was apparent to a reasonable person in his position.

2.  Unseaworthiness

You may, but are not required to award punitive damages if you find that the ship owner, F/V LARRY VO, wantonly or willfully failed to provide the plaintiff with a seaworthy vessel, and that failure was a proximate cause of the plaintiff's injuries.

Answer in dollars and cents.

ANSWER: $ _57,500.00_

21

397

## PRESIDING JUROR

When you go into the jury room to answer the questions, the first thing you will need to do is choose a presiding juror. The presiding juror has the following duties:

1.  Have the complete charge read aloud, if it will be helpful to your deliberations.

2.  Preside over your deliberations. This means the presiding juror will manage the discussions and see that you follow the instructions.

3.  Give written questions or comments to the bailiff who will give them to the judge.

4.  Write down the answers to questions you agree on.

5.  Get the signatures for the verdict certificate.

6.  Notify the bailiff that you have reached a verdict.

Does everyone understand the duties of the presiding juror? If not, please tell me now.

## INSTRUCTIONS FOR SIGNING THE VERDICT CERTIFICATE

You may answer the questions in this charge on a vote of ten jurors. The same ten jurors must agree on every answer in the charge. This means you cannot have one group of ten jurors agree on one answer and a different group of ten jurors agree on another answer. If ten jurors agree on every answer, those ten jurors sign the verdict. If eleven jurors agree on every answer, those eleven jurors sign the verdict. If all twelve of you agree on every answer, you are unanimous and only the presiding juror signs the verdict.

All jurors should deliberate on every question. You may end up with all 12 of you agreeing on some answers, while only ten or eleven of you agree on other answers. When you sign the verdict, however, only those ten who agree on every answer will sign the verdict.

Does everyone understand these instructions? If not, please tell me now.

Please remember you should not discuss this case with anyone, not even with other members of the jury, unless all of you are present and assembled in the jury room. Should anyone attempt to talk to you about the case before the verdict is returned, whether at the courthouse, at your home, or elsewhere, please inform the judge of this fact.

MICHAEL GOMEZ
JUDGE PRESIDING

22

398

# VERDICT CERTIFICATE

Check One:

_____ Our verdict is unanimous. All twelve of us have agreed to each and every answer. The presiding juror has signed the certificate for all twelve of us.

_____          _____
Signature of Presiding Juror                Printed Name of Presiding Juror

_____ Our verdict is not unanimous. Eleven of us have agreed to each and every answer and have signed the certificate below.

__✓__ Our verdict is not unanimous. Ten of us have agreed to each and every answer and have signed the certificate below.

| | SIGNATURE | PRINTED NAME |
|---|---|---|
| 1. | Norman S. Smith | Norman S. Smith |
| 2. | | Graham Sheffer |
| 3. | Darshana Desai | DARSHANA DESAI |
| 4. | Carla Hinton | Carla Hinton |
| 5. | Doncel Garrett | DONCEL GARRETT |
| 6. | LBNobleza | LEONIDA B. NOBLEZA |
| 7. | | |
| 8. | Marky Webster | MARKY S WEBSTER |
| 9. | Thomas L Atchley | Thomas L Atchley |
| 10. | Tortie Oliphant-Smith | Tortie Oliphant-Smith |
| 11. | David Kriewaldt | DAVID KRIEWALDT |

23

399